Franklin Life Insurance Company v. Wallace, Administrator.

Filed Jan. 22, 1884.

———————◆———————

No. 10,972.

FRANKLIN LIFE INSURANCE COMPANY v. WALLACE, ADMINISTRATOR.

LIFE INSURANCE.—*Forfeiture of Policy.*—Forfeitures are not favored, and where the language of the policy is doubtful, courts will adopt that construction which will avert a forfeiture.

SAME.—*Mutual Insurance.*—*Policy-Holder's Right to Application of Dividends.*—Equity will compel the application of dividends earned by the policy, to prevent a forfeiture.

SAME.—*Note Executed by Assured.*—*Payment.*—An instrument, in the form of a promissory note, executed to the company by the assured, evidences the loan of money and operates as a payment of the premium.

SAME.—*Effect of Default in Payment of Note.*—The failure of the assured to pay the note does not deprive him of the rights accrued under the policy prior to the default.

SAME.—*Dividends.*—Dividends earned prior to default in the payment of premiums belong to the policy-holder, but may be applied to the payment of notes due the company.

SAME.—*Construction of Policy.*—*Forfeiture.*—Suit on a life policy of a mutual company, containing in it, in large type, the words "non-forfeiting policy," and, in addition to the common stipulations and conditions, containing an agreement in case of non-payment of any subsequent annual premium, that the defendant would, on the death of the assured, pay five hundred dollars for each annual premium which had been paid. It was averred in the complaint that two annual payments had been paid. Answer that only half of each of the two premiums had been paid, a note having been given at the time for one-half of the first; that when the second became due a note for the amount of the first note and half of the second premium was given, containing a promise, not at any given day, to pay the sum, and to pay interest at 7 per cent. per annum, payable annually or the policy should be forfeited; that the note should be a lien on the policy, and the amount deducted therefrom when the policy became due; that dividends on the policy should be applied in payment of the note, and that neither principal nor interest has been paid. Reply, that the note was received

as payment, and that the defendant had dividends on the policy in its hands sufficient to pay the note, and it had long been its custom so to apply such dividends.

*Held,* that the reply was good.

From the Superior Court of Marion County.

*B. Harrison, C. C. Hines* and *W. H. H. Miller,* for appellant.

*W. Wallace* and *L. Wallace,* for appellee.

ELLIOTT, J.—The appellant is an insurance company belonging to the class known as mutual insurance companies, and the plan of its organization, like that of all companies of that class, is that the policy-holders shall share in the dividends accruing from its business. On the 7th day of August, 1866, it issued to the appellee's intestate, Eli A. Hall, the policy on which this action is based.

At a prominent place in the policy, and in large type, is printed the words " Non-Forfeiting Policy," and in the introductory part of the instrument is this provision: "·This policy witnesseth that the Franklin Life Insurance Company of Indianapolis, Indiana, in consideration of the representations made to them in the application for this policy, and the sum of $349.40 to them paid by Eli A. Hall, and of the annual premium of $349.40 cents to be paid on or before 12 o'clock M. on the 7th day of August in every year for the period of ten years, or until the death of the insured, should that event sooner occur, do insure the life of Eli A. Hall." This provision is followed by a promise to pay the amount of the insurance, and then follows a provision declaring the conditions upon which the policy is issued and accepted. The condition first set forth is that the assured shall not go beyond certain territorial limits; that he shall not engage in any of the kinds of business designated, and that he shall not do certain other acts which are specified. After these conditions is written the following: " And it is also understood and agreed by the assured to be the true intent and meaning hereof, that if the declaration made by or for the

Franklin Life Insurance Company *v.* Wallace, Administrator.

said assured, and bearing date the 17th day of July, 1866, and upon the faith of which this agreement is made, shall be found in any respect to be untrue, then, and in such case, this policy shall be null and void; or in case the said annual premiums (the party whose life is insured being living) shall not be paid on or before the several days hereinbefore mentioned for the payment thereof, then and in every such case, the company will on the above terms and conditions pay the sum of $500 for every annual premium paid. And it is further agreed by the within assured, that in every case where this policy shall cease, or become or be null and void, all previous premiums and payments made thereon and all profits shall be forfeited to the said company." The complaint charges that the premiums were paid for two years, and demands judgment for $1,000. The theory on which it proceeds is, that the assured was entitled, under the provisions of the policy, to $500 for each annual premium paid by him.

The answer alleges that the appellee's intestate did not pay either of the annual premiums in money, but paid one-half of the first premium in money and executed his note for the remainder; that when the second annual premium became due he paid one-half of it in money and executed his note, including therein the amount for which the first note was executed and one-half of the second premium, and that neither the principal nor interest of the note has been paid. Appellee unsuccessfully demurred to the answer, and, upon the overruling of his demurrer, replied, in substance, that the note was received as a payment of the premiums; that it had long been the custom of the company to apply dividends due its members to the payment of notes such as that executed by the assured, and that it had in its hands dividends due the appellee's intestate sufficient to pay the note.

We regard the reply as clearly good.

Forfeitures are never favored, and surely should not be in this case, where the assured received what professed to be a non-forfeitable policy. Importance should be attached to the

statement that the policy is a non-forfeitable one, for it certainly exerts an important influence upon the construction of the contract and upon the rights of the parties. What the insurer declared should be a "non-forfeiting policy" should not be adjudged a forfeitable one, unless a clear case is made requiring that conclusion. It can not, of course, be held that such a policy can, in no event, be declared forfeited for a breach of the conditions written in it, but it may and should be held·that such a policy should not be declared forfeited for a failure to pay premiums, if there are circumstances equitably excusing payment. If such a policy as this may be forfeited for non-payment of premiums just as an ordinary policy may be, then the statement that it is "non-forfeiting" is·deprived of all force and meaning, and an important feature of the contract utterly ignored.

The note set forth in the answer reads thus:

"INDIANAPOLIS, August 7th, 1867.

"For value received I promise to pay to the Franklin Life Insurance Company three hundred and forty-nine $\frac{10}{100}$ dollars, with interest, at the rate of seven per cent. per annum, which interest shall be payable annually or the policy be forfeited; this note, being given for part of the premium on policy No. 93, is to remain a lien upon said policy until it becomes due by limitation or by the death of E. A. Hall, when the note shall be deducted from the said policy unless sooner paid. The dividends on the policy to be applied to the payment of the note.          (Signed)     E. A. HALL."

In determining the sufficiency of the reply, it is not necessary to decide whether the note received for the premium constituted a payment, for, treating the note as evidencing simply an unpaid premium, still the reply is good. The note, it will be observed, is not payable at any specified period, but continues, at least, as long as the policy endures, and is to be paid by applying the amount due upon it to whatever may be due upon the policy. It is the general rule, that courts will not permit a forfeiture of a vested interest where the party insist-

ing upon it is not clearly in the right, and has not done all that equity requires of him. In the present case, the contract requires the application of dividends to the note, and it was the duty of the company to have so applied them. It was held in *Girard Life Ins. Co.* v. *Mutual Life Ins. Co.*, 97 Pa. St. 15, that a mutual insurance company, having in its hands dividends sufficient to pay the premium note, can not insist upon a forfeiture. In that case it was said: "If it had such right, equity will compel such application to prevent the forfeiture." The decision rests on solid principle, for policy-holders in a mutual insurance company are members of the corporation, and are entitled to have the officers and agents give just and reasonable protection to their rights. In the present instance, there is a stronger equity than in the case cited, for here there is not merely a passive right to apply the dividends to the note, but there is a definite duty. It is hardly necessary to cite authorities upon the general doctrine that equity will prevent a forfeiture whenever it can be done without doing violence to the plain and unambiguous language of the contract; nor can it be necessary to cite authorities to sustain the proposition that where the construction of a contract is doubtful courts will prefer that which will prevent a forfeiture. Of the many cases upon this subject we here select one, not merely because it declares the settled rule, but because it enforces it in a case very similar to the one under discussion. In the case to which we refer, *Hull* v. *Northwestern M. L. Ins. Co.*, 39 Wis. 397, it was said by the court: "Forfeitures are only enforced when it appears that this is the plain intent and meaning of the contract; and the rule applies, that the words of the instrument shall be taken most strongly against the party employing them." At another place, in the same opinion, it is said: "It was the manifest duty of the company to so apply the dividend due the insured March 29th, 1874, and prevent a forfeiture, if, indeed, by the terms of the policy, a forfeiture would result from a failure to pay the interest then due on the outstanding loan notes. Under these circumstances, it

would be most unjust and inequitable to allow the company to prevail in its defence that the policy, as to the three-tenths of the original sum, became forfeited for non-payment of interest. The premium notes outstanding are made a lien on the policy, and of course are to be deducted from the amount of recovery."

In *Manhattan Life Ins. Co.* v. *Hoelzle,* 8 Ins. Law Journal 226, will be found a charge by Judge Treat, affirming that "A forfeiture of a life policy can not be made if there is a dividend due the policy-holder sufficient to pay the premium or part of the premium due, which by custom of the company is applicable to the payment of premiums." It is true that there was a division of the members of the Supreme Court of the United States upon the questions involved in the case, but we, nevertheless, deem the case entitled to weight as an authority in favor of the conclusion we have reached. Strongly in point, and, in truth, decisive of the question, is the case of *Phœnix Ins. Co.* v. *Doster,* 106 U. S. 30.

In the present case, it is evident that the contracting parties did not intend that the failure to pay the note should work a total forfeiture. This is manifested by the statement that the policy is a non-forfeiting one, by the provision in the note already referred to, by the provision that the note shall be a lien upon the policy, and be deducted from the amount due on the policy, and by the conduct of the parties under the contract. The policy and the note are to be read together, and in construing them, as we have already intimated, the acts of the parties done under them are to exert an important influence. *North-Western M. L. Ins. Co.* v. *Little,* 56 Ind. 504; *Reissner* v. *Oxley,* 80 Ind. 580; *Phœnix M. L. Ins. Co.* v. *Hinesley,* 75 Ind. 1; *Willcuts* v. *Northwestern M. L. Ins. Co.,* 81 Ind. 300. It is averred in the reply that the custom of the company had always been to apply dividends in payment of premium notes, and this well comports with the tenor of the note, for it is therein provided that dividends shall be so applied.

It has often been decided that a note, although not payable in bank, will be deemed a payment when the parties have agreed that it shall have that effect. *Alford* v. *Baker*, 53 Ind. 279. Treating the note as an ordinary non-commercial note, the averments of the reply are sufficient to bring the case within this rule.

As shown in *North-Western M. L. Ins. Co.* v. *Little, supra*, the note is, however, not an ordinary promissory note, but is, in fact, more in the nature of a receipt. In equity and justice, it should be regarded as an evidence of the loan of the money of the corporation to one of its members, and not as evidence that a premium remains unpaid. Its terms import that it represents a continuing indebtedness, the policy standing as its security, and the maker having a right to have dividends, accruing to him as a member of the company, applied to its payment. In view of the well recognized and eminently just principle of equity, that forfeitures are odious, and in view of the provision that the policy is non-forfeitable, the note (if it be proper to call it such) should be given the effect we have ascribed to it, even though its terms were ambiguous and its construction doubtful. To give it any other effect would be to defeat the evident intention of the parties, and make nugatory the only feature of the policy which gives it anything like a non-forfeitable character. Such a result plain principles of natural justice make it our duty to avert unless the rigor of the contract is such as compels us to a contrary course. That this result can be averted without doing violence to the language of the contract is, to our minds, not doubtful; for to us it seems clear, that the just conclusion from the language of the contract, taking, as we must, the note and the policy together, is, that the failure to pay the note did not, of itself, deprive the assured of all rights under the policy, at all events, not while the company had dividends due him in its hands. *Phœnix Ins. Co.* v. *Doster*, 100 U. S. 30.

Much that has been said in discussing the rulings upon the pleadings applies to the ruling denying a new trial.

Authorities deciding questions arising upon non-forfeitable policies can not have full force in cases where the policy is declared to be a non-forfeitable one.   In the present case, there is no condition in the policy providing for a forfeiture on failure to pay premiums, and there is a statement, not on but in the policy, that it is non-forfeitable.

The provision, upon which the appellant relies as entitling it to declare a forfeiture, is found in a note executed a year after the policy was issued.   This note was accepted for the premium, and the provision in it should be regarded as securing the note rather than as affecting the character of the policy.   It was said in *North-Western M. L. Ins. Co.* v. *Little, supra,* in speaking of premium notes similar to the one before us, " except in so far as these obligations provide for the payment of annual interest, they impress us as partaking more of the nature of receipts for money loaned or advanced out of a particular fund, in which the assured had an interest, to be thereafter accounted for on some future settlement with that fund, than of promissory notes."   If this be true, as we have no doubt it is, of notes executed contemporaneously with the policy, much more the reason for holding it so where the note was not executed until a year after the policy was issued.   It is true here as it was in the case referred to, and we again quote from it, that " It appears to us at all events not to have been intended that the principal of these notes would have to be paid as a condition precedent to a recovery on the policy."   This we say because the note worked a payment of the premium and evidenced a loan of money, and the non-payment could not operate to revoke a right fixed the moment it was accepted.   It seems clear to us, that when the note was accepted the rights then existing under the policy could not be swept away by something occurring in the future.   Either the rights of the assured to $500 for each annual premium paid accrued at the time of payment or the provision in the policy is nugatory.   This is the conclusion reached in *North-Western M.L.Ins. Co.* v. *Little, supra,* although expressed

in different language. We find in that case this language: "In other words, that the forfeiture for the non-payment of premiums, or of interest on premium notes, only applies to so much of the policy as is not paid up." Suppose, for the sake of illustration, that the assured had paid in full two annual premiums and had executed his note for a third, containing a stipulation like that written in the note here exhibited, is it not clear that if there could be any forfeiture at all, it would be limited to the future, and that, in the language of the court in *North-Western M. L. Ins. Co.* v. *Little, supra,* the forfeiture "only applies to so much of the policy as is not paid up." Our strong conviction is that what has been secured is not lost by a failure to do something in the future, although possible future benefits may be.

It will be profitable to again recur to the condition written in the note, and, at the expense of repetition, we again give the provision: "Which interest shall be paid annually or the policy forfeited." This provision, taken in connection with the rule of law to which we have referred, and in connection with the terms of the policy and of the other provisions of the note, and considered in the light of the rule that equity will not permit a forfeiture, the just construction should be that declared in *North-Western M. L. Ins. Co.* v. *Little, supra,* namely, that the forfeiture of the policy goes no further than to prevent the reaping of benefits which may thereafter accrue, and does not take away what had become fixed. An examination of the cases will show that we are fully sustained in this conclusion, and, without repeating what we have copied from cases already referred to, we turn to other cases.

In *Symonds* v. *Northwestern M. L. Ins. Co.*, 23 Minn. 491, the action was upon a policy very similar to that here under discussion, except that it, as well as the premium notes, were more favorable to the insurance company, and the court held substantially the same doctrine as in our own case. The first proposition is thus stated: "Conditions providing for dis-

abilities and forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced." This is followed by the holding that the payment of annual premiums is made by paying whatever the insured is required to pay, and that a premium note, when required by the company, is a payment of the premium. The court then proceeds to discuss the character of the note, and, in the course of the discussion, treats the taking of the notes as an investment, and say: " The taking and holding of these notes as a means of paying anticipated dividends, and, if they were more than sufficient for that purpose, of paying, *pro tanto*, the insurance money when due, appears to have been deemed by the company a desirable mode of investment; at any rate, it has stipulated for the notes, and nothing else will satisfy the stipulation." It was also said: " The policy contemplates or provides for a forfeiture for non-payment of premiums or interest on premium notes—not a forfeiture of the paid-up part of the policy, but only of the part yet to be earned by payment of the premiums." Again it is said: " This condition contemplates saving to the insured the benefit of her premiums paid in the manner provided in other parts of the policy, when the policy ceases or determines merely by reason of failure to keep up payment of premiums."

In *Insurance Co.* v. *Bonner*, 36 Ohio St. 51, the premium note contained this provision, " which interest shall be paid annually, or the policy forfeited," and contains also other provisions like those in the note in this case. This court held, to quote the language of the opinion, that: " The forfeiture operated to relieve the company of 'the whole sum assured,' but left the policy binding for, 'as many tenths of the original sum insured as there shall have been complete annual premiums paid, at the time of the default.' " The same view was taken of the character of the premium notes as was taken in *North-Western M. L. Ins. Co.* v. *Little, supra.* They were treated as payment, and the money represented by them

regarded as loans to the assured, made by way of investment. The Supreme Court of the United States has spoken quite emphatically upon this question, and we quote from the opinion in *Insurance Co.* v. *Dutcher*, 95 U. S. 269, the following: " If the money had been actually paid to the company, and the next moment loaned back, and the note then taken, there would not have been room even for a quibble upon the subject. Why go through such a ceremony? Why not go directly, as was done, to the end in view? The intent which animated the conduct of the parties determines its character."

In *Ohde* v. *Northwestern L. Ins. Co.*, 40 Iowa, 357, the provision in the notes given for the premiums were substantially the same as those in the note in this case, and the conclusion reached was the same as in the cases we have cited.

There can be no doubt as to the right of the assured to his share of the dividends accruing from the business of the company, for this is the letter and spirit of the contract. It is written in the note: " The dividends on the policy are to be applied to the payment of the note." If this were not so, the character of the company is such as entitled him to a participation in the profits.

The cases to which we have referred all treat the taking of the premium notes as a loan to the assured by way of investment of the funds of the company. We think it perfectly clear that if the company had invested in the note of a third person taken by it from Hall as a payment of the premium, that payment would be complete and would entitle him to all the benefit accruing from his policy until it ceased to live; and it certainly can make no difference in principle that the company took, by way of investment, the note of the assured instead of that of another person; so all the cases in effect decide, and counsel have cited none to the contrary, nor have we, after a somewhat diligent search, been able to find any. It seems quite plain, then, that Hall was entitled to all the

dividends earned before his policy ceased. The evidence shows that the assured paid premiums in cash and notes that carried his policy until August, 1868, and that, on the 14th day of April, 1868, a dividend of fifty per cent. was declared, and to this dividend, as part of the benefit of his living policy, the assured was entitled.  He was entitled, by the express terms of his policy, to $500 for each annual premium paid, and, by the character of the company, and his position in it, to participate in the profits; more than this, the express stipulations of the note gave him a right to have dividends applied to the payment of the note, and we take note to mean the principal as well as the incident.  To state the proposition somewhat differently : By the terms of the policy he was entitled to $500 for each annual premium paid, and by virtue of his membership in the company, and the stipulation in his note, he was entitled to dividends which attached as an incident of the policy.  In *Dutcher* v. *Brooklyn L. Ins. Co.*, 3 Dillon C. C. 87, this doctrine is carried much farther than we are required to carry it here.  There the assured demanded a paid-up policy, and the company refused it, on the ground that a premium note was unpaid; but the court held that the claim of the assured was well founded, and that she was entitled to dividends to the time of her death, or until the time policy became payable.  It was held that the right to a share of the dividends proportionate to the amount of the premiums paid continued as long as there was any interest in the company's business by a paid-up policy, or otherwise.  The court said of the premium note : " It could not be determined until the death what would be due on that note for while it bore seven per cent. annually, it was subject to reduction for dividends. It was uncertain whether the dividends would exceed the interest, or amount to the whole note, principal and interest." How much stronger the reason for holding that the assured is entitled to dividends earned and declared before there was any default, and that is the case here, for the assured claims only the dividend accrued and declared in April of 1868, and

there was no default until the following August. The case we have cited was decided by two able judges, DILLON and TREAT, and was affirmed by the Supreme Court of the United States in *Insurance Co.* v. *Dutcher*, 95 U. S. 269.

We have examined the evidence with care, and are satisfied that the court did not err in awarding the appellee $481 damages. There is, it is true, an error in the computation of the actuary, but, allowing appellee the interest on his claim, to which he was justly entitled, the judgment was not for any greater sum than he was entitled to recover; it was, in fact, for less.

Judgment affirmed.

Filed Feb. 13, 1884.