## AMERICAN SURETY CO. OF NEW YORK v. STINNETT et al.

No. 9688—Opinion Filed March 23, 1920.

(Syllabus by the Court.)

**1. Officers—Liability on Bonds—Negligence and Malfeasance.**

It goes without saying that sureties on official bonds are liable for negligence or malfeasance of their principal in the performance of acts which are done by virtue of office.

**2. Same—Validity of Surety Bond—Nonpayment of Premiums.**

Where a bonding company signed as surety the official bond of a city official for one year, and thereafter extended the bond annually for three years by means of renewal certificates, without exacting cash payment of the renewal premium or prompt payment thereof at a specified time, and the bond was silent as to the payment of premiums and the plan of exacting payment of premiums was that the local agents of the bonding company would file a claim therefor with the proper city official and the same would be audited and paid 60 or 90 days thereafter, usually, and the same would be received without complaint, and when the fifth annual renewal was sought, claim therefore was filed in such manner by the local agent, which claim was misplaced in some way, and on being so advised the company filed another claim for such premium, which was pending for allowance when the principal in the bond, absconded and was short in his accounts, held, that in a suit by the city to recover for the shortage of the principal, the surety may not defeat a recovery against it because the renewal premiums had not been paid.

**3. Same—Judgment—New Trial.**

Record examined, and held in the instant case that the motion for a new trial was properly overruled, and the judgment of the trial court is affirmed.

Error from District Court, Muskogee County; R. P. de Graffenried, Judge.

Action by the city of Muskogee against Clay Stinnett and the American Surety Company of New York. Judgment for plaintiff, and the Surety Company brings error. Affirmed.

Roach & Mossman, for plaintiff in error.

Kelly Brown, for defendants in error.

JOHNSON, J. This action was commenced by the city of Muskogee, as plaintiff, against Clay Stinnett and the American Surety Company, to recover the sum of $4,169.69 upon the official bond of the said Clay Stinnett.

The material portions of the plaintiff's petition were: That on the 15th day of July, 1911, and prior thereto the defendant, Clay Stinnett, was acting as bookkeeper for the plaintiff, and as such handled moneys belonging to the plaintiff; that on said date he executed the bond sued on for the faithful performance of his duties; and the further provision of the bond was:

"And shall pay over all moneys that shall come into his hands as such bookkeeper as required by law for a period of one year from and including the 7th day of July, 1911, and for such other additional period as this bond may hereafter be renewed for, and shall deliver to his successor in office all moneys, books, records, papers and other things belonging to his said office, then his obligation shall be void, otherwise it shall be and remain in full force and effect"

—making a copy of such bond "Exhibit A"; further alleging that said bond was renewed by the defendant Surety Company by renewal certificates issued by it, the first of which being for the period from the 7th day of July, 1912, to the 7th day of July, 1913, the second from the 7th day of July, 1913, to the 7th day of July, 1914, the third from the 7th day of July, 1914, to the 7th day of July, 1915, and the fourth from the 7th day of July, 1915, to the 7th day of July, 1916, making copies of such renewal certificates exhibits to its petition; that on or about the 11th day of April, 1916, and while said bond was in full force and effect by reason of the renewal certificates, the defendant Clay Stinnett absconded and fled from the city of Muskogee, leaving his accounts short in the sum of $5,002.69, and wrongfully converted such sum to his individual use; and alleging a demand for payment of said sum, which had been refused except as to the sum of $834, which amount had been paid by the defendant surety company; and the refusal to pay said further shortage; and praying judgment for said balance in the sum of $4,168.69.

The defendant Stinnett made default. The defendant surety company answered by general denial, after which it specifically denied that it was liable on said bond or any renewal certificate thereof from and after July 6, 1915; and alleged that the pretended continuation certificate for the year July 7, 1915, to July 7, 1916, never took effect for the reason that the same was not signed by the principal, Stinnett, and was never accepted or paid for by the plaintiff or by any other person or corporation, alleging that the sum of $834 was the total amount of the shortage or embezzlement of the defendant Stinnett prior to July 6, 1915, while the bond was in force, and the defendant

surety company had paid off and discharged said liability.

The plaintiff replied, denying the allegations of the defendant, alleging that if the continuation certificate for the year July 7, 1915, to July 7, 1916, was not signed by the principal, such signing was wholly unnecessary, and that if it was necessary, the defendant surety company waived the same and never made any protest or objection thereto until after the filing of this cause, but repeatedly demanded payment of the premium for said continuation, which demand was never refused but which premium was never paid through inadvertence and oversight of the plaintiff, and plaintiff tendered said premium into court, and as a further reason for nonpayment alleged that the surety company never presented to the plaintiff for allowance its claim for said premium in the proper form to be passed upon by the council of the city of Muskogee, and that none of the prior continuation certificates were ever signed by the defendant Stinnett, and that the defendant surety company never made any objection or protest thereto, but received and accepted the payment of premiums thereon without any request or suggestion or demand that they be signed by the defendant.

The cause was tried to the court, and on the 7th day of July, 1917, the court rendered judgment in favor of the plaintiff and against the defendants in the sum of $4,496.64. The defendant surety company filed its motion for a new trial, which was overruled by the court and such action excepted to by the defendant surety company, and to reverse the judgment this proceeding in error was regularly commenced by petition in error on January 2, 1918, with copy of case-made attached.

The defendant surety company's specifications of error are:

"1st. The trial court erred in overruling the motion of plaintiff in error, American Surety Company of New York, for a new trial.

"2nd. The trial court erred in holding that the American Surety Company was surety on the bond of Clay Stinnett as bookkeeper of the city of Muskogee, at any time after July 6, 1915.

"3rd. The trial court erred in rendering judgment against the American Surety Company for any shortage or embezzlements by Clay Stinnett occurring after July 7, 1916.

"4th. The trial court erred in not rendering judgment in favor of the defendant American Surety Company."

Counsel for plaintiff in error say in their brief:

"The contention of the American Surety Company may be stated as follows: The bond of Clay Stinnett was written July 7, 1911, for one year, 'and for such other additional period as this bond may hereafter be renewed for.' Each continuation of the bond was a new contract. Each new contract of renewal required, like every other contract, an offer and an acceptance, a meeting of the minds of the parties, and a consideration. The bond was continued by renewals down to July 7, 1915, when the surety company offered to again renew. But there was no acceptance of this offer, no action whatever by the city upon it, no consideration tendered or paid for a renewal, and no meeting of the minds, or mutual understanding that the bond should again be renewed.

"Under the circumstances the American Surety Company was not liable for any shortage or embezzlements by Stinnett after July 7, 1915, and has discharged its full liability by payment of the $884 found by the examiner to have been embezzled prior to that date."

It was admitted that the premium on this bond was paid by the city of Muskogee and the bond accepted by the city and continuation certificates issued down to July 7, 1915, and premium paid during that time by the city; that they were delivered to the city, approved by the city, and paid by the city in substantially the following manner:

"This bond was accepted by the city council and renewed from year to year, the premiums being due and paid as follows: First premium, due July 7, 1911. Paid Oct. 12, 1911. Second premium, due July 7, 1912. Paid Sept. 28, 1912. Third premium, due July 7, 1913. Paid Sept. 27, 1913. Fourth premium, due July 7, 1914. Paid Oct. 12, 1914. Fifth premium, due July 7, 1915. Not paid."

On July 6, 1915, the following renewal certificate was presented to the city council by the American Surety Company and received by it and referred to the commissioner of finance and the legal department:

"American Surety Company of New York.

"Amount,                    Continuation Certificate.
"$5,000.00                    Premium $12.50.
"No. 151018.
"Official Bond.
"Date, May 25th, 1915.

"Bond No. 922311 issued by the American Surety Company of New York for Five Thousand ($5,000.00) Dollars on Behalf of Clay Stinnett in favor of the city of Muskogee, Oklahoma, is hereby continued in force from the 7th day of July, 1915, to the 7th

day of July, 1916, subject to all the covenants and conditions thereof. It is expressly stipulated that in no event sha!l the aggregate liability of the surety for any or more defaults of the principal during any one or more years of the suretyship under the bond hereinabove referred to, as extended by this or any other extension thereof, exceed the amount specifically set forth in said bond or any existing certificate changing the amount of said bond.

"_____(L. S.)
"Principal.

(Seal) "American Surety Company of New York.

"Attest: By W. F. Hafrentz, President.

"W. H. Lewis,
"Resident Secretary,
"At Oklahoma City, Okla."

The bill for the premium on the bond for the year ending July 7, 1916, was presented and numerous demands were thereafter made by the surety company for the payment of this premium. The witness C. B. Brooks testified that he was bookkeeper for Culbertson & Tomm, local agents of the American Surety Company, and that he had made numerous efforts to collect the premium due on this bond for the period from July 7, 1915, to July 7, 1916. He was asked:

"Q. Do you remember of the attempt made by you to collect the premium on the Clay Stinnett bond the year from July, 1915, to July, 1916? A. Yes, sir. Q. Did you go to the city hall for the purpose of collecting that premium? A. Yes, sir. Q. Who did you see at the city hall? A. Clay Stinnett. * * * Q. On your trips to the city hall did you make out and leave a bill for this? A. Yes, sir. Q. In what form was that bill in? A. Our regular statement we rendered at the end of each month and I filed a claim account down there. Q. A claim account? A. Yes, sir. Q. By whom was it prepared? A. By Mr. Stewart. Q. And you left that at the city hall? A. Yes, sir. Q. How many times did you go to collect the premium? A. Numerous times. Q. Three or four times? A. Yes, sir. Q. And did you not collect the premium? A. No, sir. Q. Well, you did not collect it? A. No, sir."

Cross-examination of C. B. Brooks by Mr. Moon:

"Q. How long apart were your trips down there to collect this premium? A. Usually I went there the first of the month, usually. Q. Went the first of the month? A. Yes, sir. Q. For about three or four months? A. Yes sir. Q. And each time you saw Mr. Stinnett and asked for the money? A. I saw Mr. Sam Rose one time."

The amount of the premium was carried on the books of the agents for the company as a claim against the city, and no effort was ever made to secure the cancellation of the bond. In fact, on January 29, 1916, a duplicate certificate was issued by the surety company to replace the original certificate, which had been lost. Stinnett continued to occupy the position of the city auditor and bookkeeper until April 11, 1916, at which time he absconded, being short in his accounts five thousand and two dollars and sixty-nine cents ($5,002.69).

The bond was silent as to the question of premium or as to how and when the same should be paid. As we have seen, payments were never exacted in advance, but were always deferred premiums, in each instance from two to three months. It is clear to us that in these circumstances the defendant company waived the right of forfeiture after its liability had accrued. This question has been decided by this court in the case of Shawnee Mutual Fire Ins. Co. v Cannedy, 36 Okla. 733, 129 Pac. 865, wherein it was said:

"The plaintiff gave two notes for the premium on the policy. They were dated April 22, 1908. One was for the sum of $10, due May 1, 1908. The other was for $22, and was due October 1, 1908. Each note contained the following provision: 'If this note is not paid at maturity, the whole amount of the premium shall be considered earned, and all notes given in settlement of said policy be due, and the policy be null and void, and so remain until the same shall be fully paid, and the policy be reinstated by the company.' * * * The plaintiff did not pay or cause to be paid, either of the premium notes at the time they became due and payable, and there was no extension of time for the payment of same. On the 22d day of April, 1909, the dwelling house covered by the policy was totally destroyed by fire, and the plaintiff furnished proof of loss as required by the policy, but the company denied liability for the reason that the plaintiff had not paid the premium notes as provided therein, and that, therefore, the policy was forfeited. * * * The question is whether by retaining the premium notes and endeavoring to collect them in full the company waived the forfeiture. It has been held that a condition such as contained in the notes given for premium in this case did not render the policy void until the company had by affirmative action declared the policy forfeited. Mutual Life Insurance Co. v. French, 30 Ohio St. 241, 27 Am. Rep. 443. It has been held that such a provision as the one before the court in this case, in a premium note, but not in the policy, is nugatory. Dwelling House Ins. Co. v. Hardie, 37 Kan. 674, 16 Pac. 82. It has also been held, where the stipulation for forfeiture is contained in the note, that equity will relieve against it, for the reason that its object is merely to secure

2—78

prompt payment of the note, and as the breach of the agreement to pay promptly can be compensated, equity will relieve against the forfeiture. St. Louis Mutual Ins. Co. v. Grigsby, 10 Bush (Ky.) 310; Montgomery v. Phoenix Ins. Co., 14 Bush (Ky.) 51; N. W. Mutual Life Ins. Co. v. Fort, 82 Ky. 269; Mutual L. Ins. Co. v. Jarboe, 102 Ky. 80, 42 S. W. 1097, 39 L. R. A. 504, 80 Am. St. Rep. 343; Manhattan Life Ins. Co. v. Patterson, 109 Ky. 624, 60 S. W. 383, 53 L. R. A. 378, 95 Am. St. Rep. 393."

To the same effect was the holding of this court in Fidelity Phenix Fire Ins. Co. v. School District No. 62 of Jackson County, 70 Oklahoma, 174 Pac. 513; Springfield Fire Ins. Co. v. E. B. Cockrell Holding Co. 67 Oklahoma, 169 Pac. 1060; St. Paul & C. Ins. Co. v. Mountain Park Stock Farm Co., 23 Okla. 78, 99 Pac. 647.

We think that the motion for a new trial was properly overruled. The judgment of the trial court is affirmed.

OWEN, C. J., and KANE, RAINEY, PITCHFORD, HIGGINS, and BAILEY, JJ., concur.